# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## STATE OF TENNESSEE v. BRANDON L. BRAWNER

**Appeal from the Circuit Court for Madison County**
**No. 05-466     Roy B. Morgan, Jr., Judge**

**No. W2013-01144-CCA-R3-CD  - Filed February 4, 2014**

Appellant, Brandon L. Brawner, pleaded guilty to one count of vandalism of property valued at $10,000 or more and received a six-year sentence, to be served in a community-based alternative to incarceration (community corrections).  A violation of probation warrant[1] was subsequently filed, alleging that appellant perpetrated a domestic aggravated assault, aggravated assault, and vandalism of $1,000 or more while using a knife and that appellant owed $9,438.50 in fines, costs, and restitution.  The trial court revoked his probation, and this appeal follows.  Appellant now alleges that the trial court abused its discretion by ordering him to serve the remainder of his sentence in the Tennessee Department of Correction.  After our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

George Morton Googe, District Public Defender; and Jeremy B. Epperson, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Brandon L. Brawner.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; and Jody Pickens, for the appellee, State of Tennessee.

---

[1] Appellant's probation violation report reflects that appellant was transferred to state probation on March 28, 2007.

**OPINION**

## I. Facts and Procedural History

Appellant pleaded guilty and a judgment was entered in the instant case on December 20, 2005. A violation of probation warrant was issued on April 5, 2013.[2] The trial court

[2] The probation violation report also reflects that appellant's probation was revoked and reinstated on January 9, 2012. The probation violation report states that the January 9, 2012 hearing resulted in "an order revoking and reinstating [appellant's] probation to begin anew on this date. New expiration date is now January 9, 2018." We note that the legality of the January 9, 2012 order could be questioned based on language in *State v. Hunter*, 1 S.W.3d 643 (Tenn. 1999).

In *Hunter*, on September 3, 1991, appellant pleaded guilty to four charges, and the trial court imposed two consecutive two-year sentences, a consecutive one-year sentence, and a concurrent six-month sentence, for a total effective probationary sentence of five years. *Id.* at 644. The trial court revoked and reinstated appellant's probation on January 13, 1992. *Id.* On February 18, 1993, a second violation of probation warrant was issued, and, after appellant pleaded guilty to aggravated assault, the trial court revoked his probation and reinstated appellant's original five-year sentence. *Id.* at 644-45. The trial court also sentenced appellant to a suspended eight-year sentence for the aggravated assault conviction, to be served consecutively; therefore, his total effective probationary sentence was thirteen years. *Id.* The trial court again revoked appellant's probation on December 15, 1994, and reinstated his original probationary sentences. *Id.* at 645. Finally, on May 30, 1996, the trial court revoked appellant's probation and ordered him to serve each of his original sentences in the department of correction, a total effective sentence of thirteen years. *Id.* The Tennessee Supreme Court affirmed the trial court's decision. *Id.* at 644.

*Hunter* contains the following passages:

For the reasons provided herein, we hold that when a trial court has determined that a probation violation has occurred, it possesses the authority to: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining period of probation for as much as an additional two years.

. . . .

Before the appellant could successfully complete his initial two-year probationary term, he repeatedly violated the conditions of his probation. Each time when the trial court revoked the appellant's probation and then reinstated it, the appellant began serving his original sentence anew.

. . . .

The appellant contends that [Tennessee Code Annotated] section 40-35-308(c) was designed to prevent trial courts from repeatedly revoking and reinstating a defendant's original probation. We disagree. Nothing in the text of section 40-35-308(c) prohibits a trial court

(continued...)

held a hearing regarding the probation violation on April 15, 2013.

At the hearing, the State called Jimmy Preston Powell, Jr., as a witness. Mr. Powell testified that he and Ashley Brawner were co-workers at Portfolio Recovery Associates and that they had previously been romantically involved. Mr. Powell explained that on March 28, 2013, he and Ms. Brawner were friends but were no longer romantically involved. On March 28, 2013, at 10:00 p.m., Mr. Powell and Ms. Brawner left work together and walked to Ms. Brawner's car so that Ms. Brawner could drive Mr. Powell to his vehicle. Mr. Powell testified that after he entered Ms. Brawner's car, he saw appellant exit a vehicle and run toward them holding a knife. Ms. Brawner immediately entered the vehicle, started the engine, and exited the parking lot before appellant confronted them. Mr. Powell testified that he called 9-1-1, and Ms. Brawner drove to a bowling alley parking lot to wait for law enforcement officers to arrive. Mr. Powell stated that appellant's actions placed him in fear for his safety. When Mr. Powell returned to his vehicle in the Portfolio Recovery Associates parking lot, all four tires had been punctured, an "X" was carved in the vehicle's hood, and

---

[2](...continued)
from causing execution of a defendant's original sentence.

. . . .

To summarize, we hold that at the conclusion of a probation revocation hearing, a trial court can: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the remaining probationary period for a period not to exceed two years.

*Id.* at 644-48. Based on the phraseology of these passages, separate panels of this court have construed the language regarding probation in *Hunter* to mean either (1) that the trial court was able to begin appellant's probationary period anew without ordering incarceration or (2) that the trial court was limited to extending appellant's probationary period by two years. *See State v. Anthony Charles Henderson*, No. M2003-02145-CCA-R3-CD, 2004 WL 1434481, at *2-3 (Tenn. Crim. App. June 25, 2004) (construing "cause execution of the judgment as originally entered" as the trial court's ability to order appellant to serve his original sentence in confinement); *State v. Joe W. France*, No. E2003-01293-CCA-R3CD, 2004 WL 1606987, at *4 (Tenn. Crim. App. July 19, 2004) ("[T]rial courts are limited upon a revocation of probation. There is only authority to order incarceration, require service of the original judgment, or to extend the probationary term for up to two years."). *But see State v. Stephanie Campbell*, No. E2008-02581-CCA-R3-CD, 2009 WL 2486186, at *4 (Tenn. Crim. App. Aug. 14, 2009) ("Thus, as our supreme court explained, the trial court can either order the defendant to serve the entire sentence in confinement, order 'the original probationary period to commence anew,' or simply extend the remaining sentence by up to two years."); *Anita C. Norris v. State*, No. M2007-02119-CCA-R3-HC, 2008 WL 2521454, at *3 (Tenn. Crim. App. June 25, 2008) ("The supreme court also expressly rejected Hunter's argument 'that reinstating the original probationary term every time probation is revoked produces a result which is too harsh for some defendants.'").

Because the record in this appeal does not contain the original January 9, 2012 order revoking and restating appellant's probation, we are unable to address the issue regarding its legality.

scratch marks from a blade were etched in the vehicle's trunk lid. He asserted that the estimates to repair the damage were between $3,000 and $4,000.

The State next called Ashley Brawner as a witness. Ms. Brawner testified that she had been married to appellant since July 2011. She stated that while she was separated from appellant, she became romantically involved with Mr. Powell. However, prior to March 28, 2013, she and Mr. Powell had ended their relationship. Ms. Brawner testified that on March 28, 2013, she and Mr. Powell had walked to her car when she saw appellant, her husband, exit an unknown gray truck and run toward her vehicle. She recalled that appellant was holding an unopened pocket knife as he approached them. Ms. Brawner stated that she and Mr. Powell called 9-1-1 and then drove to a bowling alley to wait for law enforcement officers to arrive. Ms. Brawner stated that appellant's actions placed her in fear for her safety. When Ms. Brawner saw Mr. Powell's car, it had four flat tires, scratches, and "a big spot in the window."

The State's last witness was Amanda Frasier. Ms. Frasier testified that she was employed at Portfolio Recovery Associates and was a member of the Tennessee Army National Guard. Ms. Frasier recalled that on March 28, 2013, she was in the parking lot at Portfolio Recovery Associates when she saw appellant approach a car and scream, "F*** my wife, b****." Appellant struck the window of the driver's door approximately five times, attempting to break the window. When he was unable to break the window, he "slit" all four tires, "drew" an "X" on the hood of the car, and used a knife to scratch the paint on the remainder of the vehicle.

During cross-examination, Ms. Frasier stated that appellant held a closed knife when he approached the car and that he opened the knife when he began puncturing the tires. She also testified that the car was unoccupied during the incident.

After hearing this proof, the trial court determined that based on the testimony presented, appellant had violated the law while on probation by committing the new offenses of domestic aggravated assault, aggravated assault, and vandalism of $1,000 or more. In making its determination, the trial court gave no weight to the allegation that appellant owed $9,438.50 in fines, costs, and restitution. The trial court found that appellant had violated his probation and ordered him to serve the remainder of his sentence in confinement.

## II. Analysis

On appeal, appellant argues that the trial court abused its discretion by ordering him to serve the remainder of his sentence in confinement. Appellant contends that "[t]he

circumstances from which [appellant's] violations arose justified additional conditions on [appellant's] suspended sentence but not complete revocation of his sentence."

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to: (1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years. Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e)(1); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). In the context of probation revocations, for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554; *see also State v. Pamela J. Booker*, No. E2012-00809-CCA-R3-CD, 2012 WL 6632817, at *2 (Tenn. Crim. App. Dec. 19, 2012).

The trial court concluded that appellant had violated the terms and conditions of his probation by committing new offenses. This determination is supported by the record. Mr. Powell and Ms. Brawner testified that appellant ran toward them holding a knife, which placed them both in fear for their safety. In addition, Ms. Frasier testified that she witnessed appellant strike the driver's side window of a car approximately five times, puncture the car's four tires, carve an "X" on the hood of the car, and scratch the paint on the remainder of the vehicle. Ms. Frasier's testimony was consistent with Mr. Powell's and Ms. Brawner's testimony regarding the damage that had been inflicted on Mr. Powell's car. There is substantial evidence to support the trial court's conclusion. *See Shaffer*, 45 S.W.3d at 554. Therefore, the trial court did not abuse its discretion when it revoked appellant's probation and ordered confinement. Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e)(1); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999). Appellant is not entitled to relief on this issue.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE